UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| APPLIED FILTER TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> vs. <br><br> JEFF WETZEL, individually, and the marital community of JEFF WETZEL and JANE DOE WETZEL; ENVIRONMENTAL SYSTEMS AND COMPOSITES, INC., a Washington corporation, <br><br> Defendants. | Case No. C09-1040JLR <br><br> **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> Note on Motion Calendar: As Soon As Possible <br><br> ORAL ARGUMENT REQUESTED |

1. <u>RELIEF REQUESTED</u>

Plaintiff Applied Filter Technology, Inc. ("AFT") moves this Court pursuant to Federal Rule of Civil Procedure 65 for entry of a Preliminary Injunction Order directed to defendants Jeff Wetzel ("Wetzel") and Environmental Systems and Composites, Inc. ("ESC") in the form attached to this Motion.

2. <u>EVIDENCE RELIED UPON</u>

This Motion is based upon the Complaint on file herein, the Declaration of Seth H. Row

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION -1-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

In Support of Injunction Motions ("*Row Dec.*"), and the Declaration of Paul Tower in Support of Injunction Motions ("*Tower Dec.*").

### 3. STATEMENT OF FACTS IN SUPPORT OF MOTION

AFT is a Washington corporation engaged in the business of providing products, systems, and support to local utility companies and others for the purpose of purifying biogas from anaerobic digesters and landfills by removing contaminants, such as siloxanes, from the fuel gas so that it can be burned without damage to engines. *Tower Dec.*, ¶2. Defendant Wetzel is a former full-time consultant to AFT. *Tower Dec.*, ¶1, 2. Defendant ESC is a competitor of AFT's, owned and run by another former consultant to AFT. *Tower Dec.*, ¶2.

Wetzel began working for AFT, on a part-time basis, in approximately 1996. *Tower Dec.*, ¶3. In 2003 Wetzel executed a Confidentiality and Non-Disclosure Agreement ("NDA") with AFT. *Tower Dec.*, Ex. A. One purpose of the NDA was to permit Wetzel to have greater access to AFT's proprietary, confidential and trade secret information. *Tower Dec.*, ¶ 3. That information includes AFT's filtration techniques and products, gas testing techniques (which was the primary focus of Wetzel's work), and its customer and supplier information. *Id.* The NDA required Wetzel to keep all such information confidential, use it only to benefit AFT, and to return all such information upon demand if his relationship with AFT terminated. *Tower Dec.*, Ex. A.

AFT has expended in excess of $5,000,000 to develop its business, including proprietary technology relating to biogas filtration, unique chemical components for its filtration technology (sometimes involving exclusive license arrangements for the chemical component), relationships with and information about customers and potential customers, relationships with suppliers, and proprietary methods for biogas analysis. *Tower Dec.*, ¶¶4 – 8. The expense and

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION -2-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

effort expended by AFT in developing its proprietary, confidential, and trade secret products, processes, designs, and techniques has resulted in AFT becoming one of the most successful companies in its field and its products and processes becoming a standard against which other competitors are judged by potential customers. *Tower Dec.*, ¶9. In addition, AFT's commitment to its warranties, its commitment to providing service to its customers beyond its warranty obligations, the uniqueness of its products, and the reliability of its technology have earned it considerable goodwill among its customers and potential customers. *Tower Dec.*, ¶10. The industry in which AFT competes is highly competitive. Competition is generally based both on quality and dependability, and also price and support. *Tower Dec.*, ¶11.

Prior to 2007, ESC had not competed actively with AFT in the biogas purification segment of the filtration market. *Tower Dec.*, ¶12. In or about 2007, ESC began advertising products and services related to biogas. *Id.* About the same time Paul Tower, the owner and head of AFT, began to suspect that Wetzel was providing AFT confidential information to ESC to enable ESC to compete in the biogas purification market. *Tower Dec.*, ¶13. AFT took certain steps, including involving legal counsel, to try to determine if Wetzel was doing so, and it contacted ESC about the matter. *Tower Dec.*, ¶13. In response ESC removed certain items from its website. *Id.* AFT also began to attempt to limit Wetzel's access to AFT's computer systems. *Tower Dec.*, ¶13. However, AFT was unable to substantiate its suspicions about Wetzel and ESC. *Tower Dec.*, ¶13.

Since 2007, ESC has been the successful bidder or applicant, on projects that were not publicly known, but which were known to Wetzel as a result of his work for AFT. *Tower Dec.*, ¶14. The manner in which ESC competed for these projects, including the proposals made by ESC and the timing of those proposals, indicate that ESC was using confidential information

PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION -3-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

provided by Wetzel that he learned through his work for AFT, including confidential information about the projects themselves. *Tower Dec.*, ¶14.

In early June, 2009, Wetzel terminated his contracting relationship with AFT. *Tower Dec.*, ¶15. AFT knew and understood that Wetzel had downloaded information from AFT's computer systems to portable hard drive storage devices that he owned, for the ostensible purpose of working on AFT business at home. *Id.* Following the termination of Wetzel's relationship with AFT, and pursuant to the terms of the NDA, AFT sent an email to Wetzel demanding the return of AFT's confidential information. *Tower Dec.*, ¶15. Wetzel did not comply with that request nor did he comply with a subsequent request (through counsel) that he return the information. *Id.* AFT also sent, via counsel, a letter to Wetzel's counsel demanding that he preserve, among other things, all documents and electronically stored information (ESI) taken from AFT. *Row Dec.*, Ex. 1.

Since Wetzel terminated his relationship with AFT, AFT has been informed that Wetzel, on behalf of ESC, and ESC and its agents, have represented to customers and potential customers of AFT and ESC that ESC's technology relating to biogas purification is "the same" as AFT's, that ESC "has" AFT's technology, that ESC "split off" from AFT and possesses the same technology, and that ESC "stole" Wetzel and his know-how away from AFT. *Tower Dec.*, ¶16. In addition, since Wetzel terminated his relationship with AFT, ESC or its agents have attempted to be considered for two projects – one in Richmond, California and one at "Ina Road" in Tucson, Arizona – that were not publicly known but were known to Wetzel through his access to confidential information from AFT. *Tower Dec.*, ¶16.

Moreover, Wetzel has, in the last few weeks and by phone as recently as July 22, 2009, contacted a supplier to AFT who makes a proprietary chemical compound used exclusively,

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION -4-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

1  under license, by AFT in one of its unique, proprietary filtration processes. *Tower Dec.*, ¶17.
2  Wetzel made inquiries about obtaining the supplier's proprietary chemical compound and
3  information about how to use the chemical (including pressurization information) indicating that
4  the process he intended to use the chemical in is AFT's proprietary filtration process. *Id.*
5  Wetzel additionally indicated that he was seeking this information for the Richmond, California
6  and Ina Road projects. *Id.*

7  In general terms, the projects for which AFT and ESC compete proceed as follows: the
8  potential customer (often a local utility), commissions an analysis of its biogas problem using
9  AFT or one of its competitors, and from that analysis determines what types of products or
10 services are necessary to mitigate the problem; the potential customer retains a consulting
11 engineer who compiles a bid specification packet, including specifications for the purification
12 processes that it is believed will accomplish the customer's goal; the project is then put out to
13 bid to construction companies to construct the facility – those construction companies are
14 constrained in the purification processes that they can choose from by the specifications
15 included in the bid packet. *Tower Dec.* ¶18. Generally speaking, ESC and AFT compete to be
16 included in the specifications packet, meaning that ESC and AFT's potential customer is both
17 the owner (the utility) and the consulting engineer who is assembling the bid packet. *Id.*

18 The Richmond, California project went to "bid" on Tuesday, July 21, 2009. *Tower Dec.*,
19 ¶19. The Ina Road project will go to bid at the end of July, 2009. *Tower Dec.*, ¶19.

20 One of AFT's most valuable assets is the goodwill that it has generated by providing
21 unique, proprietary, and superior processes for filtration of biogas. *Tower Dec.*, ¶20. AFT
22 strongly believes that if ESC is permitted to participate in the Ina Road bidding project using the
23 information and processes that it apparently intends to use – which constitute confidential and

24
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION -5-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

proprietary information owned by AFT, and are subject to the NDA – the goodwill that AFT has developed will be immediately and irreparably damaged. *Id.* Furthermore, another of AFT's goodwill assets is its relationships with its suppliers. *Id.* The biogas filtration industry is small, and like many such industries "word" gets around quickly of a company's problems with protecting its intellectual property and relationships, to both suppliers and potential customers. *Id.* AFT strongly believes that if ESC is not immediately restrained from continuing to represent that it has AFT technology and attempting to obtain information from AFT's suppliers, AFT's goodwill will be immediately and irreparably damaged. *Id.*

### 4. ISSUE PRESENTED

Whether the Court should issue a Preliminary Injunction Order to prevent defendants from further benefit and gain from the wrongfully misappropriated AFT Confidential Information, and to prevent irreparable harm to AFT's goodwill?

### 5. AUTHORITY

#### AFT IS ENTITLED TO A PRELIMINARY INJUNCTION

Under the traditional test for determining whether to grant a temporary restraining order or a preliminary injunction, the court must find that: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. *Zango, Inc. v. PC Tools Pty Ltd.*, 494 F. Supp. 2d 1189 (W.D. Wash. 2007). To obtain preliminary injunctive relief in the alternative, a movant must demonstrate "either a likelihood of success on the merits and the possibility of irreparable injury, or that serious questions going to the merits raised and the balance of hardships tips sharply in its favor." *Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1517 (9th Cir.1992) (citations omitted).

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION -6-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

A.   **AFT Has A Probable Likelihood of Success On the Merits of Its Claim.**

   *1)   Breach of NDA*

The NDA is a valid and binding contract, supported by consideration, of the type commonly encountered in highly competitive industries involving technologies of all sorts. *National Flood Services, Inc. v. Torrent Technologies, Inc.,* 2006 WL 1663678, No. C05-1350Z (W. D. Wash. 2006) (non-disclosure agreement would be enforceable under Washington law). It was supported by consideration, in that Wetzel's rate of compensation and access to proprietary information were increased in connection with his signing the NDA. *Tower Dec.,* ¶3. It covers only items that are properly considered confidential and proprietary, and carves out, for example, information that is publicly available. *Tower Dec.,* Ex. A.

There is no question that Wetzel downloaded AFT information to personal hard drives in order, ostensibly, to work at home. Wetzel has refused to return that information, and thus has committed a clear breach of the NDA. Furthermore, Wetzel has contacted an exclusive chemical supplier to AFT, whose identity and product are confidential and who has granted AFT an exclusive license to use his product in AFT's own proprietary process, and attempted to obtain the supplier's product and information about how to use the product in AFT's proprietary process on potential projects that are not public but that were disclosed to him through his work at AFT – clearly indicating that he has information about AFT's process, along with confidential information about AFT's potential customers and suppliers.

   *2)   Violation of Uniform Trade Secrets Act*

In order to establish a claim for misappropriation of a trade secret under the Washington Uniform Trade Secrets Act ("UTSA"), the plaintiff must first prove that a legally protectable trade secret exists. *Boeing v. Sierracin Corp.,* 108 Wash. 2d 38, 738 P.2d 665 (1987). The

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION -7-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

1  UTSA prohibits "actual or threatened" misappropriation of trade secrets. RCW 19.108.010(4)
2  defines a trade secret as information, including a formula, pattern, compilation, program, device,
3  method, technique, or process that: (a) derives independent economic value, actual or potential,
4  from not being generally known to, and not being readily ascertainable by proper means by,
5  other persons who can obtain economic value from its disclosure or use; and (b) is the subject of
6  efforts that are reasonable under the circumstances to maintain its secrecy.

7  Therefore, to succeed on a claim for the misappropriation of a trade secret, such as a
8  customer list, under the UTSA a party must establish (1) that the information derives
9  independent economic value from not being generally known or readily ascertainable to others
10 who can obtain economic value from knowledge of its use and (2) that reasonable efforts have
11 been taken to maintain the secrecy of the information. Misappropriation includes the
12 "acquisition ... by a person who knows or has reason to know that the trade secret was acquired
13 by improper means." RCW 19.108.010(2). Improper means "includes theft, ... breach or
14 inducement of a breach of a duty to maintain secrecy, or espionage through electronic means."
15 RCW 19.080.010(1). The UTSA expressly authorizes injunctive relief. RCW 19.108.020.

16 AFT has a probable likelihood of success on its claim for violation of the UTSA against
17 both Wetzel and ESC based on the misappropriation both of customer and supplier information,
18 and AFT's proprietary processes. The customer information that Wetzel has used to attempt to
19 be considered for the Ina Road and Richmond, California projects includes information about
20 the needs of both owners – which is valuable information that AFT invested in developing and
21 is not public.[1] The very existence of these potential projects is valuable confidential information

---

[1] ESC cannot claim that because some of this information *could* have been generated independently through its own efforts, the information is not therefore protected by trade secret

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION -8-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

not generally known to the public but known to AFT through its investment in relationships with potential customers. Wetzel had access to this confidential information through his employment with AFT, but AFT took steps to protect the information through the NDA. ESC has misappropriated this information in that Wetzel, and ESC and its agents, are using the information for ESC's benefit despite demand from AFT to return the information and being put on notice as early as 2007 of AFT's concerns.

**B.  AFT Will Suffer Irreparable Harm If ESC Is Not Enjoined.**

Courts have found that the loss of goodwill that occurs when a customer is contacted using confidential information wrongfully obtained is the kind of irreparable harm that will support a preliminary injunction. *Pacific Aerospace & Electronics, Inc. v. Taylor*, 295 F. Supp.2d 1188, 1199 (E.D. Wash. 2003). The Ninth Circuit has recently affirmed that loss of goodwill that is difficult or impossible to measure in economic terms will support a preliminary injunction. *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1058 (9th Cir. 2009).

Here, if ESC is not preliminarily enjoined from using AFT's confidential and proprietary information regarding its processes, and its customer and supplier information, AFT will suffer additional lost profits from projects that are awarded to ESC because ESC's "free riding" on AFT's investment allows it to under-bid AFT. More importantly for the irreparable harm analysis, however, AFT will experience a loss of goodwill within the small industry in which it

---

law. Courts have held that while a piece of information might have been generated independently, if the defendant in fact did not do so, but relied on the information taken from former employer to compete with the former employer, liability for misappropriation will exist. *See, e.g., Pacific Aerospace & Electronics, Inc. v. Taylor*, 295 S. Supp.2d 1188, 1201-02 (E.D. Wash. 2003).

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION -9-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

competes, both in terms of customer goodwill but also goodwill with its suppliers and strategic partners. In simple terms, the perception of AFT – the uniqueness of its products, its commitment to its viability as a business, and its commitment to protecting its own proprietary information and, significantly, the information of its strategic partners – will be seriously damaged if ESC and Wetzel are permitted to continue brazenly flouting their misappropriation of AFT's processes and information.

Money damages would not be an adequate remedy in this situation, because it would be extremely difficult to determine the scope of AFT's lost business if, because of the erosion of goodwill, AFT is "cut off" from opportunities that it would not know even existed. Further, the value of the lost goodwill would be difficult to value with much certainty. Finally, it is difficult to determine the extent to which AFT's confidential information could (or would) be utilized by ESC and Wetzel if they are not enjoined pending the resolution of this action. The confidential information could be further incorporated into other products or processes, the damage from which would be difficult to track, or it could be transferred to others, further decreasing the likelihood of calculating the damages flowing from ESC and Wetzel's wrongful acts.

C.  **The Balance of Harms Favors AFT.**

ESC is a recent entrant into the biogas purification market (as opposed to, for example, the odor removal aspect of the filtration market, in which it has operated for some time) and appears to have become a competitor in biogas due to its receipt of AFT confidential information misappropriated by Wetzel. AFT has spent over $5,000,000 specifically in developing itself as a dominant company in the biogas purification industry. AFT's investment has resulted in considerable goodwill as a trusted source of unique, superior, proprietary products; that goodwill is being threatened by ESC's free-riding on its relationships and

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION -10-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

processes. This is not a situation in which the harm to AFT is "matched" by an equal harm to ESC. *Compare Zango, Inc. v. PC Tools Pty Ltd.*, 494 F.Supp.2d 1189, 1196 (W.D.Wash. 2007) (threatened harm to "adware" company through lost sales and goodwill was "matched" by harm to goodwill of "spyware" company in its reputation as being able to block harmful software, which went to heart of its product). The harm to ESC is further diminished by the fact that any profits that it could claim to "lose" from biogas projects would only accrue to ESC because it has possession of AFT's confidential information.

**D.    The Public Interest Favors AFT.**

To the extent that the public interest is implicated in this action, the public interest favors enforcement of agreed-to contractual limitations on the uses to which an employee or contractor can make of confidential, proprietary and trade secret information disclosed to them in order to enable them to do their work. Without the enforcement of such agreements innovation and investment in new technologies in competitive industries would be severely harmed.

### 6.    NO BOND IS REQUIRED

Wetzel agreed, in the NDA, that upon a breach of the NDA's restrictions AFT would be entitled to "specific performance and injunctive relief or equitable relief, in ex parte without bond, for any such breach." Therefore, AFT should not be required to post any bond for the preliminary injunction or any other equitable relief afforded to AFT.

### 7.    CONCLUSION

For all of the foregoing reasons, AFT respectfully urges the Court to grant it a Preliminary Injunction enjoining ESC and Wetzel from:

    a)    competing with AFT for work related to the Tucson, Arizona "Ina Road" project;

    b)    using AFT's proprietary and confidential information relating to customers and

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION -11-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

1 suppliers for the purpose of competing with AFT in obtaining work on future projects on which

2 AFT is in good faith attempting to procure work;

3     c) using AFT's proprietary and confidential information relating to testing, product

4 design, processes, designs, and techniques in advertisements, solicitations, discussions, or

5 proposals to potential customers, suppliers, employees, agents, or the public;

6     d) that ESC return all of AFT's proprietary and confidential information and certify

7 the destruction of all copies made of such information and of all information derived from such

8 proprietary and confidential information.

9     DATED this 24th day of July, 2009.

PARSONS FARNELL & GREIN, LLP


By: /s/ Seth H. Row

John D. Parsons, WSB #33230
Seth H. Row, WSB #32905
1030 SW Morrison Street
Portland, OR 97205
Telephone: (503) 222-1812
Facsimile: (503) 274-7979
E-mail: jparsons@pfglaw.com
E-mail: srow@pfglaw.com
Attorneys for Plaintiff

PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION -12-
O:\9107001\00012 shr motion for preliminary injunction.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979