UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| APPLIED FILTER TECHNOLOGY, INC., a Washington Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JEFF WETZEL, individually, and the marital community of JEFF WETZEL and JANE DOE WETZEL; ENVIRONMENTAL SYSTEMS AND COMPOSITES, INC., a Washington Corporation,<br><br>Defendants. | Case No. C09-1040JLR<br><br>**DECLARATION OF SETH H. ROW IN SUPPORT OF PLAINTIFF'S INJUNCTION MOTIONS** |

I, Seth H. Row, declare that:

1. I am one of the attorneys representing plaintiff in this case. I make this declaration based upon my personal knowledge of the matters set forth herein.

2. On July 9, 2009 John Parsons of my office sent to James Sullivan, who had previously identified himself to Applied Filter Technology, Inc. ("AFT") as counsel for Mr. Wetzel, a letter demanding that Wetzel preserve all evidence or potential evidence, including specifically Electronically Stored Information (ESI). A true and correct copy of that letter is

ROW DEC. ISO INJUNCTIONS -1-
O:\9107001\0008 shr row dec iso tro.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

1  attached hereto as Exhibit 1. This letter followed up on an earlier communication in which AFT
2  demanded the return of AFT's confidential and proprietary information.

3      3.    That letter was sent because of AFT's concern that Wetzel (AFT did not know for
4  certain, at the time, that Wetzel had become employed by ESC) would do something –
5  advertently, or inadvertently – to alter, modify or destroy potentially critical evidence in this
6  trade secret case.

7      4.    The Federal Judicial Center's "Managing Discovery of Electronic Information: A
8  Pocket Guide for Judges" (Rothstein, Hedges & Williams, FJC, 2007), at pages 2-3, notes the
9  "dynamic, mutable" nature of ESI, and the ways in which it is different from, and more easily
10 compromised than, paper documents. It notes that "[m]erely opening a digital file changes
11 information about that file." As the "Pocket Guide" points out, the metadata of a digital file can
12 include such information as its author, the date it was created, when it was edited, what edits
13 were made, and the history of its transmission.

14     5.    Through my experience with cases similar to this one involving ESI, I have
15 learned that ESI is easily altered or damaged in ways that can be critical to the prosecution of a
16 claim for misappropriation of trade secrets. For example, information about when a file was
17 downloaded from, or uploaded to, a server can be altered if the document is copied or
18 reformatted, or if the server is used in such a way that its "log" is altered. Information about the
19 origin of a digital file can be altered intentionally, or sometimes unintentionally. Information
20 about a website can be lost if log files are overwritten.

21     6.    For these reasons, AFT is concerned that even through normal use, evidence in
22 ESC's possession or control critical to proving AFT's claims could be lost. AFT recognizes that
23 ESC, like any other business, simply cannot cease using its computer systems for a long period.
24 Therefore, AFT proposes that its forensic computer expert, Paul French, be given access to ESC

ROW DEC. ISO INJUNCTIONS -2-
O:\9107001\0008 shr row dec iso tro.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

and Wetzel's systems immediately for the purpose of making forensically sound "mirror image" copies of those systems (including the portable hard drives to which Wetzel allegedly downloaded AFT's confidential information), so that whatever data is on those systems – visible data, or hidden metadata – is preserved.  AFT proposes that after Mr. French has copied the data, the parties negotiate search methods that Mr. French can run on the data.  Mr. French would then be able to provide the data culled by use of the search methods to AFT (and ESC), and AFT could then begin to assess, in advance of the preliminary injunction hearing, what evidence may exist on those systems to support its claims, without AFT being given access to the entirety of ESC and Wetzel's electronic data, which AFT acknowledges may include ESC's own proprietary information and attorney-client privileged communications.

7. The Complaint in this matter was filed on July 22, 2009 at approximately 4:00 pm.  At approximately 4:30 pm I caused a copy of the Complaint to be faxed to Mr. Sullivan at the facsimile number that appears on his letterhead, along with a cover letter in which I informed him that plaintiff intended to present a motion for temporary restraining order to the Court as soon as the Court could hear it, and that I was willing to work with him on scheduling.  The letter requested that he call me.

8. The letter to Mr. Sullivan was directed to him as both attorney for Wetzel, and for ESC.  In 2007 AFT retained the law firm of Graham & Dunn P.C. to investigate potential theft of trade secrets by ESC.  Graham & Dunn sent communications to ESC on this issue; Mr. Sullivan appeared as counsel for ESC and engaged in further communications with Graham & Dunn on behalf of ESC.  Therefore, it is my assumption that Mr. Sullivan represents ESC and Wetzel, and in light of the fact that the prior controversy is in many ways a continuation of the

/ / /

/ / /

ROW DEC. ISO INJUNCTIONS -3-
O:\9107001\0008 shr row dec iso tro.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979

controversy that existed in 2007, I did not feel it was ethically permissible to contact ESC directly unless it appeared that Mr. Sullivan did not represent ESC as well as Wetzel.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.**

DATED this 24th day of July, 2009.

/s/ Seth H. Row

Seth H. Row, WSB #32905

ROW DEC. ISO INJUNCTIONS -4-
O:\9107001\0008 shr row dec iso tro.doc

Parsons Farnell & Grein, LLP
Attorneys at Law
1030 SW Morrison Street, Portland, OR 97205
Telephone: (503) 222-1812 / Fax: (503) 274-7979



**PARSONS FARNELL & GREIN, LLP**
ATTORNEYS AT LAW

1030 SW Morrison Street
Portland, OR 97205
(503) 222-1812 • FAX: (503) 274-7979
www.pfglaw.com

JOHN D. PARSONS
Admitted in Oregon and Washington
E-Mail Address: jparsons@pfglaw.com

IN REPLY PLEASE REFER
TO FILE NO.: 9107.001  C

July 9, 2009

**<u>Certified - Return Receipt Requested
& First Class Mail</u>**
James J. Sullivan
Attorney at Law
11110 NE 38th Place
Bellevue, WA 98004

    Re: Your Client: Jeff Wetzel
       Our Client: Applied Filter Technology, Inc.

Dear Mr. Sullivan:

  By this letter, you and your client (collectively, "Wetzel" or "you") are requested, with respect to the above-referenced dispute between Applied Filter Technology, Inc. ("AFT"), not to destroy, conceal, or alter any paper or electronic files and other data generated by and/or stored on your client's computers or storage media or any other data, such as voice mail. Although the duty to preserve such information may have arisen earlier, we are writing this letter to ensure that you fully understand our position on the scope of your client's duty to preserve. As you know, your client's failure to comply with his obligations to preserve information can result in severe sanctions being imposed by the court (and liability in tort) for spoliation of evidence or potential evidence. Although we may bring a motion for an order preserving documents and things from destruction or alteration, your client's obligation to preserve documents and things for discovery in this case arises in law and equity independently from any order on such motion.

**Demand for Preservation**

  AFT demands that Wetzel preserve all documents, tangible things and electronically stored information ("ESI") potentially relevant to any issue relating to his employment with AFT, his possession of and use of AFT's business information and/or trade secrets, and his pursuit of other employment, financial reward, or business opportunities or connections coincident with or after leaving AFT.

O:\9107001\0003 jdp shr sullivan ltr.wpd

EXHIBIT ___1___
PAGE __1__ OF __6__

James J. Sullivan
July 9, 2009
Page 2

Wetzel's preservation obligation extends beyond documents, tangible things or ESI in his care, possession or control and includes documents, tangible things and ESI in the custody of others that is subject to his direction or control. Accordingly, Wetzel must notify any current or former agent, attorney, employee, custodian or contractor in possession of potentially relevant documents, tangible things or ESI to preserve such information to the full extent of his obligation to do so, and Wetzel must take reasonable steps to ensure their compliance. All references in this letter to "you" or "Wetzel" apply equally to all such third-parties.

Please provide a copy of this letter to the persons whose job responsibilities and/or personal involvement cover the matters addressed in this letter.

**Special Instructions Regarding Electronically Stored Information.**

AFT considers ESI to be valuable and, conceivably, a critical source of evidence in this matter. The law of spoliation prohibits the destruction of electronic evidence relevant to, or that may lead to the discovery of material relevant to, the anticipated litigation, and the loss of said data could expose the spoliator to severe monetary penalties and court-imposed sanctions. The exposure to sanctions for spoliation may arise as the result of either intentional acts or negligent conduct. It is further noted that a hard copy version of said evidence is inferior to the evidentiary material in its electronic form and the production of paper may place AFT at a material disadvantage in the anticipated litigation. This is because a printout to paper of text from the electronic file does not preserve the totality of information, much of which is contained within an electronic file's non-printable metadata and other "embedded" information. Accordingly, such information in hard copy format does not suffice to provide all discoverable evidence.

*Electronically Stored Information.* ESI includes, but is not limited to, all digital or analog electronic files, **including "deleted" files and file fragments**, stored in machine-readable format on magnetic, optical, or other storage media, including the hard drives or floppy disks used by your client's computers and their backup media (e.g., other hard drives, backup tapes, floppies, Jaz cartridges, CD-ROMs) or otherwise, regardless of whether such files have been reduced to paper printouts. More specifically, ESI includes all e-mails, both sent and received, whether internally or externally; all word-processed files, including drafts and revisions; all spreadsheets, including drafts and revisions; all databases; all CAD (computer-aided design) files, including drafts and revisions; all presentation data or slide shows produced by presentation software (such as Microsoft PowerPoint); all graphs, charts, and other data produced by project management software (such as Microsoft Project); all data generated by calendaring, task management, and personal information management (PIM) software (such as Microsoft Outlook or Lotus Notes); all data created with the use of personal data assistants (PDAs), such as PalmPilot, iPaq or other Windows CE, Pocket PC,

James J. Sullivan
July 9, 2009
Page 3

or Windows Mobile devices; all data created with the use of document-management software; all data created with the use of paper and electronic mail logging and routing software; all Internet and Web-browser-generated history files, caches, and "cookies" files on any computer or other storage device and on any and all backup storage media; and any and all other files generated by users through the use of computers and/or telecommunications, including but not limited to voice mail.

*Types of ESI Storage.* ESI should be afforded the broadest possible definition and includes (by way of example and not as an exclusive list) potentially relevant information stored on electronic, magnetic or optical media. ESI includes (by way of example and not as an exclusive list) potentially relevant data or information that is magnetically, optically or otherwise stored on: file servers; digital communication servers (e-mail, voice mail, instant messaging); personal digital assistants (BlackBerry; iPhone), cell phones, and similar devices; Local Area Network (LAN) data storage; portable data storage devices and players (portable hard drives, thumbdrives, SD cards, MP3 players, iPod, etc.); hosted storage servers (e.g. webmail accounts, salesforce.com, SaaS applications); and backup tapes and archival storage media. **Note that specific steps may need to be taken to ensure that ESI nominally within the custody of third-parties (e.g. hosted storage such as webmail accounts) is preserved.**

*Suspension of Routine Destruction/Modification of ESI.* Wetzel is directed to immediately initiate a preservation directive (aka "litigation hold") for potentially relevant ESI, documents and tangible things, and to act diligently and in good faith to secure and audit compliance with such directive. You are further directed to immediately identify and modify or suspend features of any information system or document storage system (whether electronic or non-electronic) that, in routine operation, operate to cause the loss of potentially relevant ESI, documents or tangible things. Examples of such features and operations include:

- o  Purging the contents of e-mail repositories by age, capacity or other criteria;
- o  Using data or media wiping, disposal, erasure or encryption utilities or devices;
- o  Overwriting, erasing, destroying or discarding back up media;
- o  Re-assigning, re-imaging or disposing of systems, servers, devices or media;
- o  Running antivirus or other programs effecting wholesale metadata alteration;
- o  Releasing or purging online storage repositories;
- o  Using metadata stripper utilities;
- o  Disabling server or IM logging; and
- o  Executing drive or file defragmentation or compression programs.

Wetzel is also not to pack, compress, purge or otherwise dispose of files and parts of files unless a true and correct copy of such files is made.

James J. Sullivan
July 9, 2009
Page 4

Wetzel is to maintain an activity log to document modifications made to any electronic data processing system that may affect the system's capability to process any ESI, regardless of whether such modifications were made by employees, contractors, vendors and/or any other third parties.

*Preservation in Native Form.* Wetzel should anticipate that certain ESI, including but not limited to spreadsheets and databases, will be sought in the form or forms in which it is ordinarily maintained. Accordingly, Wetzel should preserve ESI in such native forms, and Wetzel should not select methods to preserve ESI that remove or degrade the ability to search ESI by electronic means or make it difficult or burdensome to access or use the information efficiently in the anticipated litigation.

Wetzel should additionally refrain from actions that shift ESI from reasonably accessible media and forms to less accessible media and forms if the effect of such actions is to make such ESI not reasonably accessible.

*Metadata Must Be Preserved.* Wetzel should further anticipate the need to disclose and produce system and application metadata and therefore should act to preserve it. System metadata is information describing the history and characteristics of other ESI. This information is typically associated with tracking or managing an electronic file. Be advised that metadata may be overwritten or corrupted by careless handling or improper steps to preserve ESI. For electronic mail, metadata includes all header routing data and Base 64 encoded attachment data, in addition to the To, From, Subject, Received Date, CC and BCC fields.

*Servers, Home Systems, Laptops, Online Accounts and Other ESI Venues.* With respect to servers like those used to manage electronic mail (e.g. Microsoft Exchange, Lotus Domino) or network storage (often called a user's "network share"), the complete contents of each user's network share and e-mail account should be preserved.

If Wetzel, his employers, other agents for Wetzel, or other employees, officers or board members create or review potentially relevant documents away from their office, the duty to preserve extends to any documents or information maintained at that location, including the contents of systems, devices and media used for these purposes (including not only potentially relevant data from portable and home computers, but also from portable thumb drives, CR-R disks and the user's PDA, smart phone, voice mailbox, or other forms of ESI storage). This duty extends specifically to your personal files, computer systems, and other personal data storage devices.

Additionally, if Wetzel, his employers, other agents for Wetzel, or other employees, officers, or board members use online or browser-based e-mail accounts or services to send or receive

James J. Sullivan
July 9, 2009
Page 5

potentially relevant messages and attachments, the contents of these account mailboxes (including sent, deleted, and archived message folders) should be preserved.

*Ancillary Preservation.* Wetzel must preserve documents and other tangible items that may be required to access, interpret or search potentially relevant ESI, including logs, control sheets, specifications, indices, naming protocols, file lists, network diagrams, flow charts, instruction sheets, data entry forms, abbreviation keys, user ID and password rosters or the like. Wetzel must preserve any passwords, keys or other authenticators required to access encrypted files or run applications, along with installation disks, user manuals and license keys for applications required to access the ESI as it is maintained in the ordinary course of business. Wetzel must preserve any cabling, drivers and hardware, other than a standard disk, if needed to access or interpret media on which ESI is stored. This includes tape drives, bar code readers, Zip drives and other legacy and proprietary devices

**Evidence Created Subsequent to This Letter**

With regard to electronic data, documents or tangible things created subsequent to the date of delivery of this letter, relevant evidence is not to be destroyed and Wetzel is to take whatever steps are appropriate to avoid destruction of evidence.

We are happy to work with you to agree upon an acceptable protocol for evidence and ESI preservation, and I am available to discuss reasonable ESI preservation steps; however, you should not defer any preservation step outlined in this letter pending such discussions.

To ensure that your and your client's obligation to preserve documents and things will be met, please forward a copy of this letter to all persons and entities with custodial responsibility for the items referred to in this letter. Please confirm in writing within five (5) days of the date of this letter that you have taken the steps outlined in this letter to preserve ESI and tangible information and documents potentially relevant to this dispute. If you have not undertaken all of the steps outlined above, please describe what you have done to preserve information within the scope of this letter.

Very truly yours,

John D. Parsons

JDP/SHR/lbb
cc:     Client

O:\9107001\0003 jdp shr sullivan ltr.wpd

EXHIBIT 1
PAGE 5 OF 6

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

   James J Sullivan
   Attorney at Law
   11110 NE 38th Place
   Bellevue WA 98004

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
   X [Sullivan signature]    ☐ Agent  ☐ Addressee
B. Received by (Printed Name): J. Sullivan
C. Date of Delivery: 7-11-09
D. Is delivery address different from item 1? ☐ Yes   If YES, enter delivery address below: ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered    ☒ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Transfer from service label): 7008 1140 0002 8504 0536

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service™** 9107-001 JDP
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ .61 |
| Certified Fee | 2.80 |
| Return Receipt Fee (Endorsement Required) | 2.30 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.71 |

Sent To: James J Sullivan Attorney at Law
Street, Apt. No.; or PO Box No.: 11110 NE 38th Place
City, State, ZIP+4: Bellevue WA 98004

PS Form 3800, August 2006    See Reverse for Instructions

EXHIBIT 1
PAGE 6 OF 6