UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| APPLIED FILTER TECHNOLOGY, INC., <br><br> Plaintiff, <br><br> v. <br><br> JEFF WETZEL, et al., <br><br> Defendants. | CASE NO. C09-1040JLR <br><br> FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER |

## I. INTRODUCTION

This matter comes before the court on Plaintiff Applied Filter Technology, Inc.'s ("AFT") motion for temporary restraining order (Dkt. # 3). AFT requests that the court order injunctive relief pursuant to Federal Rule of Civil Procedure 65(b) against Defendants Jeff Wetzel and Environmental Systems and Composites, Inc. ("ESC"). The court concludes that oral argument is unnecessary.[1] Having considered the motion, as

---

[1] It is within the court's discretion to deny a motion for temporary restraining order without an evidentiary hearing. *Cf. Anderson v. Jackson*, 556 F.3d 351, 361 (5th Cir. 2009);

well as all papers filed in support and opposition and the balance of the record, the court DENIES the motion for the reasons discussed below. The court schedules AFT's motion for preliminary injunction (Dkt. # 2) for consideration on August 28, 2009.

## II. BACKGROUND AND FINDINGS OF FACT

**1.** AFT is a Washington corporation engaged in the business of providing products, systems, and support to local utility companies and other entities to purify biogas. (Declaration of Paul Tower ("Tower Decl.") (Dkt. # 5) ¶¶ 1-2.) AFT has developed allegedly unique and proprietary technology for the removal of siloxane from fuel gases. (Tower Decl. ¶ 4.) AFT has also developed allegedly unique and proprietary methods and techniques for analyzing biogas. (Tower Decl. ¶ 5.)

**2.** ESC is a Washington corporation operating in the biogas purification field. (Declaration of Lowell Howard ("Howard Decl.") (Dkt. # 15) ¶¶ 2-4.) In 2007, ESC became a competitor of AFT when it entered the biogas purification segment of the filtration market. (Tower Decl. ¶¶ 3, 12.)

**3.** Mr. Wetzel is a former consultant for AFT. (Declaration of Jeffrey Wetzel ("Wetzel Decl.") (Dkt. # 14) ¶¶ 5-6; Tower Decl. ¶ 3.) In 1996, Mr. Wetzel began working for AFT as a consultant on a part-time basis. (Tower Decl. ¶ 3.) He terminated his contract with AFT in early June 2009. (Wetzel Decl. ¶ 15; Tower Decl. ¶ 15.)

---

*Nat'l Propane Gas Ass'n v. U.S. Dep't of Homeland Sec.*, 534 F. Supp. 2d 16, 19 (D.D.C. 2008); *Rottman v. Penn. Interscholastic Athletic Ass'n, Inc.*, 349 F. Supp. 2d 922, 928 (W.D. Pa. 2004).

**4.** In 2003, Mr. Wetzel signed a confidentiality and non-disclosure agreement ("Agreement") with AFT. (Tower Decl. ¶ 3 & Ex. A (Agreement); Wetzel Decl. ¶ 7.) The Agreement states that Mr. Wetzel shall not disclose confidential information provided to him by AFT and shall return confidential information upon AFT's request. (Tower Decl., Ex. A ¶¶ 3-4, 6.)

**5.** Mr. Wetzel performed work for AFT on his computer at home on occasion. (Wetzel Decl. ¶ 9.)

**6.** In 2007, Paul Tower, the owner of AFT, began to suspect that Mr. Wetzel was providing ESC with confidential information from AFT so as to allow ESC to compete in the biogas purification market. (Tower Decl. ¶ 13.) AFT hired legal counsel to determine whether Mr. Wetzel was providing confidential information to ESC. (Tower Decl. ¶ 13.) However, "AFT was unable to substantiate its suspicions about Wetzel and ESC." (Tower Decl. ¶ 13.)

**7.** After Mr. Wetzel terminated his relationship with AFT, Mr. Tower requested that Mr. Wetzel return confidential information that he had downloaded from AFT's computer systems to portable hard drive storage devices that he owned for the purpose of working on AFT business at home. (Tower Decl. ¶ 15.) Mr. Tower states that Mr. Wetzel did not comply with his request, nor with a subsequent request from Mr. Tower's counsel. (Tower Decl. ¶ 15.) Mr. Wetzel states that he "deleted all the material in the AFT files on [his] storage device" and "took hard copies of AFT documents going back to 2003 to a commercial shredding facility." (Wetzel Decl. ¶

13.) Mr. Wetzel further states that he has "retained no AFT proprietary and confidential information" and that his attorney communicated this information to Mr. Tower. (Wetzel Decl. ¶ 13.)

**8.** Mr. Tower states that he has been informed that "Wetzel, on behalf of ESC, and ESC and its agents, have represented to customers and potential customers of AFT and ESC that ESC's technology relating to biogas purification is 'the same' as AFT's, that ESC 'has' AFT's technology, that ESC 'split off' from AFT and possesses the same technology, and that ESC 'stole' Wetzel and his know-how away from AFT." (Tower Decl. ¶ 16.)

**9.** ESC has competed for or is competing for two projects—one in Richmond, California ("Richmond Project"), and one at "Ina Road" in Tucson, Arizona ("Ina Road Project")—that AFT alleges were not publicly known, but were known to Mr. Wetzel allegedly through his access to confidential information from AFT. (Tower Decl. ¶ 16.)

**10.** The Richmond project went to bid on July 21, 2009, and the Ina Road project will go to bid at the end of August 2009.[2] (Tower Decl. ¶ 19; Supplemental Declaration of Paul Tower ("Supp. Tower Decl.") (Dkt. # 11) ¶ 2.)

**11.** Mr. Howard states that ESC "has a representative organization, MISCO, that is active throughout the United States, which contacts ESC to inform it of projects up for bid and charges a commission for any such projects ESC then obtains." (Howard Decl.

---

[2] At the time AFT filed its motion for temporary restraining order, it believed the Ina Road Project would go to bid at the end of July 2009. (*See* Tower Decl. ¶ 19.)

¶ 5.) He states that MISCO notified ESC of the Richmond and Ina Road Projects. (Howard Decl. ¶ 5.)

12. Mr. Tower states that Mr. Wetzel "contacted a supplier to AFT who makes a proprietary chemical compound used exclusively, under license, by AFT in one of its unique, proprietary filtration processes." (Tower Decl. ¶ 17.) "Wetzel made inquiries about obtaining the supplier's proprietary chemical compound and information about how to use the chemical (including pressurization information) indicating that the process he intended to use the chemical in is AFT's proprietary filtration process." (Tower Decl. ¶ 17.)

13. Mr. Wetzel agrees that he telephoned this supplier, but states that he located the supplier via an internet search. (Wetzel Decl. ¶ 17.)

14. Mr. Tower also states that Mr. Howard telephoned an employee of Activated Carbon, a processing and packaging contractor for AFT, to inquire about pricing on container qualities of a silica gel. (Second Supplemental Declaration of Paul Tower ("Sec. Supp. Tower Decl.") (Dkt. # 17) ¶¶ 2-3.) Mr. Tower states that Mr. Howard provided the "exact specifications of the silica gel that he was interested in" and states that "those specifications matched exactly to the specifications for AFT's proprietary silica gel product."[3] (Sec. Supp. Tower Decl. ¶ 3.)

---

[3] AFT provided this evidence for the first time attached to its reply. Mr. Wetzel and ESC have not had an opportunity to respond specifically to this evidence. On August 5, 2009, however, they filed a surreply (Dkt. # 20) requesting that the court strike the new allegations raised for the first time in Mr. Tower's second supplemental declaration, as well as any portions

**15.** On July 22, 2009, AFT filed its complaint against Mr. Wetzel and ESC. (*See* Dkt. # 1.) AFT alleges claims for breach of contract, tortious interference with contractual relations, violation of Washington's Uniform Trade Secrets Act ("UTSA"), RCW § 19.108 et seq., and violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq. (Compl. (Dkt. # 1) ¶¶ 36-69.)

**16.** On July 24, 2009, AFT filed the instant motion for temporary restraining order and a motion for preliminary injunction. (*See* Dkt. # 3.) In its motion for temporary restraining order, AFT incorporates by reference the arguments made in its motion for preliminary injunction. (Mot. for TRO (Dkt. # 3) at 2 (incorporating Mot. (Dkt. # 3)).)

**17.** On July 24, 2009, AFT gave notice and sent copies of the motions, the complaint, and other documents filed in this matter to Mr. Wetzel and ESC. (*See* Dkt. # 7.) Mr. Wetzel and ESC have appeared by counsel in this matter and responded to the motion for temporary restraining order. (*See* Dkt. # 12.)

### III.  ANALYSIS AND CONCLUSIONS OF LAW

**18.** The court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because AFT alleges federal claims against ESC and Mr. Wetzel under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* The court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.

---

of AFT's reply that rest on such new allegations. The court concludes that Mr. Wetzel and ESC's request to strike is moot because the new allegations do not alter the court's analysis, as discussed below.

19. AFT seeks a temporary restraining order to enjoin ESC and Mr. Wetzel from (1) competing with AFT for work related to the Ina Road project; (2) using AFT's proprietary and confidential information relating to customers and suppliers for the purpose of competing with AFT in obtaining work on future projects on which AFT is attempting to procure work; (3) using AFT's proprietary and confidential information relating to testing, product design, processes, designs, and techniques in advertisements, solicitations, discussions, or proposals to potential customers, suppliers, employees, agents, or the public; and (4) accessing, destroying, altering, or copying, any electronically stored information contained within ESC or Wetzel's computer systems, including file servers, email servers, webmail repositories, "cloud" storage, or home or personal systems, pending AFT's forensic expert copying such information. (Mot. for TRO at 1; Proposed Order (Dkt. # 3-2) at 3.) In addition, AFT requests that the court order ESC and Mr. Wetzel to permit its forensic expert to have access to and make copies of all portable and non-portable media containing ESC's and Mr. Wetzel's electronically stored information.

20. In order to obtain a temporary restraining order, AFT must meet the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co., Inc.* 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that preliminary injunction and temporary restraining order standards are "substantially identical"). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council,* ___ U.S. ___, 129 S.Ct.

365, 375-76 (2008). A plaintiff seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter,* 129 S.Ct. at 374; *Am. Trucking Assoc., Inc. v. City of Los Angeles,* 559 F.3d 1046, 1052 (9th Cir. 2009).

**21.** <u>Likelihood of Success on the Merits</u>: Breach of Contract Claim.

    a. AFT argues that it has demonstrated a likelihood of success on the merits of its breach of contract claim because (1) Mr. Wetzel has not returned information downloaded to personal hard drives; and (2) Mr. Wetzel has contacted a chemical supplier of AFT. (Mot. at 7.) In response, Mr. Wetzel states that at the time he ended his relationship with AFT he "deleted all the material in the AFT files on [his] data storage device" and "took hard copies of AFT documents going back to 2003 to a commercial shredding facility." (Wetzel Decl. ¶ 13.) Mr. Wetzel declares that, to his knowledge, he has retained no AFT proprietary or confidential information and that his attorney communicated this fact to Mr. Tower. (*Id.*) Mr. Wetzel further states that he identified the chemical supplier via an internet search, albeit with the knowledge that AFT had worked with the supplier. (Wetzel Decl. ¶ 17.) He states that he had not previously worked with the supplier and had no knowledge of an exclusive agreement between AFT and the supplier. (*Id.*)

b. On the present record, the court concludes that AFT has not demonstrated a likelihood of success on the merits of its breach of contract claim. Mr. Wetzel does not challenge the validity of the Agreement, and the court will assume its validity for present purposes. The court is also mindful that Mr. Wetzel agrees he obtained confidential information from AFT while working as a consultant. Nonetheless, Mr. Wetzel declares that he destroyed all of the confidential information he obtained from AFT. (Wetzel Decl. ¶ 13.) Although the Agreement provides that Mr. Wetzel must "return," as opposed to destroy, confidential information upon AFT's request (Compl., Ex. A ¶ 5), AFT has not indicated that it made such a request prior to the time Mr. Wetzel destroyed the information.

c. AFT's evidence in support of its allegation that Mr. Wetzel and ESC have possession of AFT's confidential information is meager and strongly disputed. Mr. Tower admits that AFT was previously "unable to substantiate its suspicions about Wetzel and ESC" (Tower Decl. ¶ 13), and it is not clear that AFT has discovered new, more probative evidence at this time. In his declaration, Mr. Tower alleges that the manner in which ESC competed for projects indicated to him that ESC was using AFT's confidential information due to the fact that these projects "were not public knowledge," but were known to AFT. (Tower Decl. ¶ 14.) Mr. Tower thus infers that ESC must have confidential information because it is competing for the Richmond and the Ina Road Projects, among others. (*See*

Tower Decl. ¶ 16.) This inference, however, falters in the face of Mr. Howard's explanation that ESC learned of these two projects from its "representative organization, MISCO, that is active throughout the United States, which contacts ESC to inform it of projects up for bid and charges a commission for any such projects ESC then obtains." (Howard Decl. ¶ 5.) AFT does not attempt to rebut this evidence in its reply. The court finds that the fact that ESC is competing for the Richmond and Ina Road Projects does not demonstrate a likelihood of success on AFT's breach of contract claim.

   d. Likewise, AFT contends that Mr. Wetzel and ESC have possession of AFT's confidential information based on comments made by third-parties. Mr. Tower states that third-parties have told him that Mr. Wetzel and ESC have represented that they "are in possession of, own, or have access to AFT's proprietary and confidential information." (Sec. Supp. Tower Decl. ¶ 7; *see* Sec. Supp. Tower Decl. ¶ 6.) AFT correctly notes that evidence that otherwise might be inadmissible at trial may be considered on a motion for temporary restraining order in light of the expedited nature of such proceedings. *See Johnson v. Couturier*, __ F.3d __, Nos. 08-17369, 08-17373, 08-17375, 08-17631, 2009 WL 2216805, at *11 (9th Cir. July 27, 2009). Despite this leniency, however, a court need not and should not overlook the reliability of this evidence when weighing it against other evidence. Here, Mr. Wetzel declares that he has "not represented to anyone that ESC's biogas purification technology is 'the same' as AFT's

technology, that ESC 'has' AFT's technology, that ESC 'split off' from AFT and possesses the same technology, or that ESC 'stole' me away from AFT," and that he is "unaware of anyone else making any such representations." (Wetzel Decl. ¶ 15.)  Similarly, Mr. Howard disclaims making any of these statements or having knowledge of anyone else making such statements.  (Howard Decl. ¶ 8.)  AFT asks the court to disregard this evidence in favor of Mr. Tower's representations that he has been told by third-parties that Mr. Wetzel has made these types of statements.  (Tower Decl. ¶ 16; Sec. Supp. Tower Decl. ¶ 6.)  The court declines to do so.  Instead, the court finds that the weight properly afforded to AFT's evidence on this issue is substantially reduced by the less reliable character of the evidence, and that Mr. Wetzel and ESC's evidence clearly outweighs AFT's evidence.  Further, even were the court to accept Mr. Tower's characterizations of third-party statements at face value, these statements do not shed real light on the alleged conversations between Mr. Wetzel and third-parties.  The court acknowledges the difficulties facing AFT in gathering probative evidence on this issue under time constraints.  Nevertheless, the burden rests with AFT, not with Mr. Wetzel or ESC, to justify the extraordinary remedy AFT seeks.  The court concludes that AFT has not shown a likelihood of success on the merits of its breach of contract claim based on third-party comments.

e. Finally, AFT argues that the fact that Mr. Wetzel and Mr. Howard have telephoned certain of AFT's suppliers demonstrates that Mr. Wetzel and ESC

possess its confidential information. (Tower Decl. ¶ 17; Supp. Tower Decl. ¶ 3; Sec. Supp. Tower Decl. ¶ 3.) Mr. Tower's statements regarding conversations between third-party suppliers and Mr. Wetzel and Mr. Howard are hearsay. In response, Mr. Wetzel declares that he identified the chemical supplier he spoke with in June 2009 and July 2009 via an internet search and that he did not state to the supplier that he intended to use AFT's proprietary filtration process. (Wetzel Decl. ¶ 17.) Although Mr. Howard has not specifically addressed Mr. Tower's contentions regarding Mr. Howard's alleged conversation with an employee of Activated Carbon due to the fact that AFT submitted this evidence for the first time in reply, Mr. Howard has stated that "ESC does not possess any AFT confidential information." (Howard Decl. ¶ 5.) The court finds that AFT's evidence carries little weight and that, in light of Mr. Wetzel and ESC's countervailing evidence, AFT has not demonstrated a likelihood of success on the merits of its breach of contract claim based on conversations between Mr. Wetzel and Mr. Howard and third-parties.

f. On balance, taking the evidence as a whole, the court finds that AFT has not met its burden in demonstrating a likelihood of success on its breach of contract claim. On the present record, AFT has demonstrated a possibility of success on the merits, but it has not shown a likelihood. In particular, AFT has not shown a likelihood of success in establishing that Mr. Wetzel and ESC have possession of

and are using AFT's confidential information, which would give rise to a breach of the Agreement.

**22.** <u>Likelihood of Success on the Merits</u>: UTSA Claims.

    a. AFT's UTSA claims against Mr. Wetzel and ESC are predicated on essentially the same evidence submitted in support of its breach of contract claim. As discussed above, the court finds that AFT has not shown a likelihood of success in demonstrating that Mr. Wetzel and ESC have possession of and are using AFT's confidential information. This finding similarly undercuts AFT's UTSA claims.

    b. To prevail on a claim for misappropriation of a trade secret under Washington law, the plaintiff must establish that the information (1) derives independent economic value from not being generally known or readily ascertainable and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. *See* RCW § 19.108.010(4). In its motion, AFT argues that Mr. Wetzel and ESC have misappropriated its customer and supplier information and its proprietary processes. (Mot. at 8.)

    c. AFT has not demonstrated a likelihood of success on the merits of its UTSA claims with respect to its customer and supplier lists. "Trade secret protection will not generally attach to customer lists where the information is readily ascertainable. If information is readily ascertainable from public sources such as trade directories or phone books, then customer lists will not be considered a

trade secret and a prior employee, not subject to a noncompetition agreement, would be free to solicit business after leaving employment." *Ed Nowogroski Ins., Inc. v. Rucker*, 971 P.2d 936, 944 (Wash. 1999) (citations omitted).  Here, ESC states that it learned of the Richmond and Ina Road Projects from MISCO (Howard Decl. ¶ 5), and Mr. Wetzel declares that he identified chemical suppliers based on internet searches (Wetzel Decl. ¶ 17).  AFT has not replied to this evidence.  On the present record, the information contained in customer and supplier lists identified by AFT as proprietary appears to be "readily ascertainable" through other sources.  Accordingly, the court finds that AFT has not met its burden in demonstrating a likelihood of success on the merits of its UTSA claims involving its customer and supplier lists.

d. AFT has also not demonstrated a likelihood of success on the merits of its UTSA claims with respect to its proprietary processes.  AFT's processes may well be of the type entitled to protection as trade secrets under the UTSA.  However, AFT has not identified specific processes at issue in its motion.  While the court is mindful that providing too much specification might reveal the very secrets which form the basis of AFT's claims, generalized allusions to unidentified processes offer the court no method to evaluate the merits of AFT's UTSA claims, nor whether Mr. Wetzel or ESC have misappropriated the processes.  The court finds that AFT has not shown a likelihood of success on the merits of its UTSA claims involving proprietary processes.

e. On balance, taking the evidence as a whole, the court finds that AFT has not met its burden in demonstrating a likelihood of success on the merits of its UTSA claims.

**23.** <u>Likelihood of Irreparable Harm</u>

a. AFT argues that it will suffer irreparable harm if the court does not issue a temporary injunction to enjoin Mr. Wetzel and ESC. (Mot. at 9-10.) Specifically, AFT argues that it has demonstrated a likelihood of irreparable harm because (1) "AFT will suffer additional lost profits from projects that are awarded to ESC because ESC's 'free riding' on AFT's investment allows it to under-bid AFT" and (2) "AFT will experience a loss of goodwill within the small industry in which it competes," with respect to customers, suppliers, and strategic partners. (Mot. at 9-10.) It contends that Mr. Wetzel and ESC are "brazenly flouting their misappropriation of AFT's processes and information." (Mot. at 10.) Additionally, AFT argues that it may be harmed if Mr. Wetzel and ESC incorporate AFT confidential information into products or processes or transfer it to others. (Mot. at 10.) In response, Mr. Wetzel and ESC contend that AFT has not shown a likelihood of irreparable harm because any lost profits may be compensated by an award of monetary damages, if necessary, and the evidence does not support the conclusion that either Mr. Wetzel or ESC have possession of confidential information or are flouting their possession of such information. (Resp. at 9-10.)

b. AFT has not demonstrated a likelihood of irreparable harm based on lost profits. Ordinarily, lost profits do not rise to the level of irreparable harm because they can be compensated by an award of monetary damages. *See Los Angeles Memorial Coliseum Commission v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). To the extent AFT seeks lost profits potentially flowing from the Richmond Project or the Ina Road Project, AFT has not shown it could not reasonably calculate lost profits. However, even assuming that AFT's potential lost profits could not be reasonably calculated with respect to other projects, AFT has not identified particular projects that it believes ESC will be awarded over AFT's competing bid. While AFT alludes to "opportunities that it would not know even existed," potential lost profits from these opportunities are extremely speculative and AFT has provided no evidence suggesting that it will suffer such harm before the court can rule on a motion for preliminary injunction. The court finds that AFT has not met its burden in demonstrating a likelihood of irreparable harm based on lost profits.

c. AFT has also not demonstrated a likelihood of irreparable harm based on a loss of goodwill. Intangible benefits such as business goodwill and reputation are often not quantifiable, and their loss may amount to irreparable harm. *See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.,* 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to . . . goodwill, qualify as irreparable harm."); *see also United Healthcare Ins. Co. v. AdvancePCS,* 316

F.3d 737, 741 (8th Cir. 2002) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury."); *MySpace, Inc. v. Wallace,* 498 F. Supp. 2d 1293, 1305 (C.D. Cal. 2007) ("Harm to business goodwill and reputation is unquantifiable and considered irreparable."). AFT argues that it will suffer a loss of goodwill based on Mr. Wetzel and ESC "brazenly flouting" their alleged misappropriation of AFT processes and information. As discussed above, the court is not persuaded that AFT, on the present record, has shown a likelihood of establishing that either Mr. Wetzel or ESC possess AFT's confidential information or that they are representing having possession of such information. AFT's present contention that it will suffer a loss of goodwill is thus highly speculative. The court finds that AFT has not demonstrated a likelihood of irreparable harm based on a loss of goodwill.

    d. AFT has not demonstrated a likelihood of irreparable harm based on Mr. Wetzel or ESC using AFT's confidential information. AFT's argument that Mr. Wetzel and ESC may incorporate AFT's confidential information into other products or processes is too speculative.

    e. On balance, taking the evidence as a whole, the court finds that AFT has not satisfied its burden in demonstrating a likelihood of irreparable harm.

**24.** Balance of Equities

    a. The balance of equities does not favor AFT. The injunctive relief requested by AFT would prevent ESC from competing for the Ina Road Project, as well as

other projects. To the extent that ESC is barred from such projects it may suffer the types of harm alleged by AFT, *i.e.*, lost profits and loss of goodwill. AFT contends that its alleged status as "the dominant company in the biogas purification industry" entitles it to greater deference in light of its accumulated goodwill. (Mot. at 10.) Conversely, a less-established company attempting to break into a new market, as AFT describes ESC, may have little margin for setback and thus feel the brunt of injunctive relief with particular acuity. Absent a further showing that Mr. Wetzel and ESC have possession of AFT's confidential information and are using it to compete with AFT, the court finds that AFT has not demonstrated that the balance of equities tips in its favor.

**25.** Public Interest

  a. The public interest is not meaningfully implicated by the dispute between AFT and Mr. Wetzel and ESC. To the limited extent that the public interest is implicated, however, it favors more rather than less competition with respect to local utility projects.

**26.** In sum, the court concludes that AFT has not met its burden for issuance of a temporary restraining order under the standard articulated by the Supreme Court in *Winter*. The court therefore denies AFT's motion for temporary restraining order.

## IV. CONCLUSION

For the forgoing reasons, the court DENIES the motion for temporary restraining order (Dkt. # 3). The court sets AFT's motion for preliminary injunction (Dkt. # 2) for consideration on August 28, 2009. AFT shall file any additional briefing or evidence in support of its motion for preliminary injunction by August 14, 2009. Mr. Wetzel and ESC shall file any additional briefing or evidence in response by August 24, 2009. AFT shall file any additional reply by August 27, 2009.

Dated this 5th day of August, 2009.

　　　　　　　　　　　　　　　　　　　　　　／s／ James L. Robart
　　　　　　　　　　　　　　　　　　　　　　JAMES L. ROBART
　　　　　　　　　　　　　　　　　　　　　　United States District Judge